By the Court,

Nelson, Ch. J.
The material question presented in this case is, whether the common law courts have any jurisdiction of personal wrongs committed by a superior officer of the navy upon a subordinate, while at sea, and engaged in the public service.
In Sutton v. Johnstone, (1 T. R. 493 to 550,) which was case for a malicious prosecution before a naval court martial upon charges of misconduct during an engagement, among other grounds taken by Lords Mansfield and Loughborough for reversing the judgment of the court of exchequer,.was this, that an action at common law could not be maintained under such circumstances, by a subordinate officer against his com-. mander. They admitted the question to be one of doubt, however, and did not profess to put the reversal upon that ground. Whether their reasons were adopted by the house of lords we are unable to determine from the report of the case. (See 1 Bro. P. C. 100, 2d ed., and 1 T. R. 784.) But in the course of the argument of Warden v. Bailey, (4 Taunt. 74,) Lawrence, J. said, he “ had heard from good private informa *98 tion that the reasons assigned by Lord Mansfield for reversing the judgment of the court of exchequer chamber were not adopted by the house of lords, though the judgment of the chief justices was affirmed.”
Whether this be so or not, however, is quite unimportant so far as the question before us is concerned. The present action is trespass, for an. assault and battery and false imprisonment; and in Sutton v. Johnstone, (1 T. R. 544,) the chief justices conceded that there was no similitude or analogy between such an action and an action on, the case for a malicious prosecution. They observed : “ An action of trespass is for the defendant’s having done that, which, upon the stating of it, is manifestly, illegal. This kind of action is for a prosecution, which, upon the stating of it, is manifestly legal.”
Actions of trespass for injuries .to the, person have been frequently brought and sustained in the common law courts of England, against naval as well as military commanders, by their subordinates, for acts done both at home and abroad, under pretence and color of naval and military discipline. (See Wall v. McNamara, and Swinton v. Molloy, stated in 1 T. R. 536, 7; also, Mostyn v. Fabrigas, Cowp. 161; Warden v. Bailey, 4 Taunt. 67; 4 Maule & Selw. 400, S. C.) The most recent case I have found is that of Hannaford v. Hunn, (2 Carr. & Payne, 148,) which was an action for false imprisonment brought by the master of a man-of-war against his captain. The defendant pleaded, among other things, that “he was captain and commander of the" Tweed, which was a ship of war, and that the plaintiff, being a person belonging to the fleet, and subject to his command as superior officer, did wilfully and unlawfully refuse to obey a certain lawful command &c., contrary to his duty; in consequence of which he,' the defendant, put him under arrest,” in order to bring him to trial before a court martial. It appeared in evidence that, while the ship was lying at .Bahia, the defendant directed the plaintiff to sign a set of orders that had been drawn up for the management of the crew. The plaintiff, conceiving that some of them^were at variance with the printed instructions issued for the regulation *99 of the navy, wrote a respectful letter to the captain, pointing out the supposed discrepancies, and declining to sign the orders: whereupon he was arrested, and kept imprisoned for some three days, and then released. He was again commanded to sign the orders, which he did, remonstrating at the same time against the effect of some of them; and he was again imprisoned for about forty days. The defendant attempted to show that the second arrest took place in consequence of an improper entry made by the plaintiff in the log-book; and also for prevarication and falsehood. Abbott, Ch. X, in presenting the case to the jury, concluded his charge as follows: “If you shall be of opinion that the first arrest took place on the writing of the letter as to the signing of the orders, and that the writing of such letter was not an act of disobedience; and if you shall think that the second arrest was made in continuation of the first, or on account of the insertion in the log-book, or of prevarication and falsehood, and also that the entry was not an unauthorized entry, and that there is no proof of falsehood or prevarication; then, in either of these cases you will find your verdict for the plaintiff.” A verdict was accordingly found in favor of the plaintiff for 300Z. damages.
There are also many cases in the books where actions have been sustained against members of courts martial, naval and military, who have exceeded their authority in the infliction of punishment. (See 4 Taunt. 70, 75, and the cases there cited.) In the case of Lieut. Frye v. Sir Chaloner Ogle, (1 McArthur On Courts Martial, 268, 4th ed.,) the defendant was president of a court martial which had sentenced the plaintiff to fifteen years imprisonment; when the only charge against him was that he required a warrant in writing to justify him in taking another officer into his custody under an arrest, which was considered no offence at all. The verdict was 1000Z. This case became somewhat memorable for a collision between the civil and military courts, and for the firmness and tritimph of the former. In the course of the trial of the cause, the learned judge having remarked that the plaintiff -was at liberty to bring his action against any of the members of the court martial, *100 he proceeded against Rear-Admiral Mayne and Captain Rentone, who were arrested by a writ from the C. B. at the breaking up of the court martial on Admiral Lestock, where the former presided, and the latter sat as a member. This was much resented by the members of the court martial,.who passed resolutions on the subject, reflecting in intemperate language on the chief justice of the court, (Sir John Willes.) The resolutions were laid by the lords of the admiralty before the king: upon which the chief justice, without waiting for the result, caused every member of the court martial to be taken into custody for contempt, and was proceeding in a legal way to assert and maintain the authority of his office, when a stop was put to the proceedings by a public, written submission, signed by all the members of the court martial, and transmitted to the chief justice, which, after being read in the C. B., was registered in the remembrancer’s office—“ a memorial, as the chief justice observed, to the present and future ages, that whoever set themselves up in opposition to the laws, or think themselves above the law, will in the end find themselves mistaken.” (See 1 McArthur, 436, Appen. No. 24.)
It was suggested on the argument by the counsel for the defendant, that, inasmuch as he was in the service of the United States when the acts complained of were done, the courts of this státe, as matter of comity and policy, should decline to, take jurisdiction, within the principle of the case of Gardner v. Thomas, (14 Johns. Rep. 134.) A similar objection was taken and overruled in Percival v. Hickey, (18 Johns. Rep. 257,) which was the case of a marine trespass committed by the commander of a British sloop of war; Spencer, Ch. J. remarking, that the court was not at liberty to assume or decline jurisdiction upon speculative grounds, or for reasons of public policy.
I am of opinion that the demurrer is well taken, and that the plaintiff is entitled to judgment.
Ordered accordingly.